Bernardo Cruz                                    The Honorable John C. Coughenour
Tony Gonzalez
Lori Jordan Isley
Joachim Morrison
COLUMBIA LEGAL SERVICES
300 Okanogan Ave., Suite 2A
Wenatchee, WA 98801
(509) 662-9681

Adam Berger
Lindsay Halm
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, Washington 98104
(206) 622-8000

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARO ROSAS and GUADALUPE TAPIA, as individuals and on behalf of all other similarly situated persons,<br><br>                Plaintiffs,<br><br>    vs.<br><br>SARBANAND FARMS, LLC, MUNGER BROS., LLC., NIDIA PEREZ, and CSI VISA PROCESSING S.C.,<br><br>                Defendants. | CLASS ACTION<br><br>**JURY DEMANDED**<br><br>No. 18-CV-00112<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |

## PRELIMINARY STATEMENT

1.      This is an employment law class action on behalf of over 600 foreign H-2A farm workers who allege that Defendants Sarbanand Farms, and its parent company Munger Bros., violated federal anti-trafficking laws through a pattern of threats and intimidation that caused its H-2A workforce to believe they would suffer serious harm unless they fully submitted to Sarbanand's labor demands. This same pattern also created a hostile work environment based on the Plaintiffs' national origin and violated their right to be free from discrimination in employment under Washington's Law Against Discrimination.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 1

2.       Sarbanand further violated anti-trafficking laws through a highly-orchestrated mass firing and eviction of approximately 70 H-2A workers, under threat of arrest by police and immigration authorities. Those actions, taken after a one-day strike to improve safety and health conditions after co-worker Honesto Ibarra was taken by ambulance to an emergency room and later died, violated the workers' right to engage in concerted activity and further intimidated Sarbanand's remaining H-2A workforce to provide labor or face serious financial harm.

3.       Plaintiffs also allege that Defendants CSI and Nidia Perez, unlicensed and un-bonded farm labor contractors, violated the Washington Farm Labor Contractor Act (FLCA) because they failed to disclose unlawful hourly production standards and failed to inform Plaintiffs they would have to pay for meals above and beyond the $12 a day Sarbanand deducted from each H-2A workers' paycheck for that purpose. Defendants Munger and Sarbanand are jointly liable for all FLCA violations because they knowingly used unlicensed contractors.

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Questions).

5.       This Court has jurisdiction over this action pursuant to 18 U.S.C. §1595(a) (TVPA).

6.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367 (Supplemental Jurisdiction).

7.       The proper venue for this action is in the Western District of Washington pursuant to 28 U.S.C. § 1391.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 2

## PARTIES

8.      Plaintiff Barbaro Rosas lives in the state of Nayarit, Mexico and was employed by Defendants as an H-2A worker in 2017 until fired on August 5, 2017.

9.      Plaintiff Guadalupe Tapia lives in the state of Guanajuato, Mexico and was employed by Defendants as an H-2A worker in 2017 until fired on August 5, 2017.

10.      Defendant Sarbanand Farms, LLC is a Washington corporation with its principal place of business in Sumas, Washington located in Whatcom County.

11.      Defendant Munger Bros., LLC is a California corporation with its principal place of business in Delano, California.

12.      Defendant Nidia Perez, is a resident of California and at all relevant times was an agent of Munger Bros.

13.      Defendant CSI Visa Processing S.C. is a Mexican company with its principal place of business in Durango, Mexico.

## STATEMENT OF FACTS

14.      The plaintiffs are Mexican Nationals who worked for Munger Bros. and Sarbanand Farms as foreign H-2A agricultural workers during the 2017 blueberry harvest.

15.      Munger Bros., LLC is owned by two brothers, Kewel and Baldev Munger.

16.      Sarbanand Farms, LLC is a wholly-owned subsidiary of Munger Bros, LLC.

17.      Upon information and belief, Munger and Sarbanand share financial, logistical, and administrative resources.

18.      Robert Hawk is president and chief executive officer of Munger.

19.      Cliff Woolley is chief administrative officer of Munger.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 3

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

20.     Munger is the number one producer of fresh blueberries in the world.

21.     Munger has more than 3,000 acres of blueberries in Washington, Oregon, California, British Columbia, and Mexico.

22.     CSI Visa Processing S.C. is a farm labor contractor that supplies H-2A workers from Mexico to agricultural employers in the United States.

23.     Guillermo Mathus is the president of CSI Visa Processing, S.C. based in Durango, Mexico.

24.     CSI has multiple offices in Mexico to meet with workers and discuss H-2A employment opportunities in the United States.

25.     Since at least 2012, CSI staff, including its president, have regularly met with Washington agriculture entities in Washington state to encourage them to hire CSI to import H-2A workers from Mexico.

26.     Those business meetings were arranged by a state-wide grower organization called WAFLA, Washington state's largest supplier of H-2A workers.

27.     Since at least 2012, CSI staff have emailed Washington agricultural employers about the company's services.

28.     Since at least 2012, CSI staff have arranged for Washington agricultural employers to come to Mexico to recruit H-2A workers for Washington state.

29.     Since at least 2013, CSI has regularly purchased advertising in WAFLA's annual reports that are provided to agricultural employers throughout Washington state and posted on WAFLA's web-site.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 4

30.     In those advertisements, CSI touted itself as the "best option" to locate, select, orient, transport, and process H-2A workers from Mexico.

31.     In those advertisements, CSI stated the company "is the reliable and reputable H2 agent you need."

32.     WAFLA's 2013 Annual Report informed agricultural employers that having an agent like CSI in the H-2A worker's home country was "critical."

33.     WAFLA's 2013 Annual Report informed agricultural employers "the agent is the link to your foreign workforce" that can recruit workers and "explain the job in detail."

34.     In February 2013, CSI and WAFLA staff conducted a joint presentation to 3,500 prospective H-2A workers in Nogales, Mexico where the main message was the opportunities available "if they are part of the H-2A program and recruited to Washington state to work."

35.     Later in 2013, a WAFLA staff member travelled to Colima, Mexico to observe CSI staff recruit H-2A workers for two different agricultural employers in Washington state.

36.     Since at least 2014, CSI has contracted directly with WAFLA, to provide labor recruiting services in Mexico.

37.     Upon information and belief, during the entire contractual relationship, WAFLA had a valid Washington farm labor contractor's license, but CSI did not.

38.     Since at least 2014, CSI staff have regularly traveled to Washington state to train agricultural entities in conjunction with WAFLA about the H-2A visa program requirements.

39.     In 2014, CSI sponsored WAFLA's Workforce Summit in Kennewick, Washington.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 5

40.     In January 2014, CSI's president, Guillermo Mathus, traveled to Washington state and attended WAFLA's conference as a featured speaker.

41.     Since approximately late 2015 or early 2016, CSI has had at least one full-time employee, Roxana Macias, living and working in Washington state.

42.     Prior to starting work with CSI, Roxana Macias worked for three years at WAFLA as the H-2A Program Manager where she developed extensive contacts with Washington agricultural entities.

43.     Roxana Macias's business card identifies her as the Director of Compliance for CSI Visa Processing.

44.     In 2016, CSI sponsored WAFLA's Workforce Summit in Ellensburg, Washington.

45.     In January 2016, Guillermo Mathus traveled to Washington state and attended WAFLA's conference as a featured speaker.

46.     Mr. Mathus's 2016 biography stated his primary role at CSI was "the recruitment and evaluation of new and potential candidates for temporary H2 positions."

47.     Mr. Mathus's 2016 biography stated that he "has been working with H2 employers and workers for over 13 years."

48.     Roxana Macias also attended the 2016 WAFLA conference in Ellensburg, Washington and was a featured speaker.

49.     Ms. Macias's 2016 biography stated her role at CSI was to "ensure all parties involved in recruitment of H2 workers abide by all applicable laws and regulations."

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 6

50.     Later in 2016, Ms. Macias attended meetings with WAFLA's grower members to discuss CSI's services and recruit agricultural employers to expand CSI's business opportunities in Washington state.

51.     In January 2017, CSI created a Washington limited liability corporation that was registered with the Washington State Secretary of State called CSI Visa Processing USA, LLC.

52.     According to the Washington Secretary of State's corporation filings, CSI Visa Processing USA, LLC had a business address 1610 Pacific Ridge Drive SE, Olympia, WA.

53.     Roxana Macias was the number one executor listed on CSI USA's application to the Secretary of State and provided the same address in Olympia, Washington.

54.     The only other two executors listed on the Secretary of State application were Guillermo Mathus and Tania de la Fuente.

55.     Tania de la Fuente's business card lists her as the General Manager for CSI S.C. based in Monterrey, Mexico.

56.     The Initial Report filed with the Secretary of State states the nature of CSI USA's business is to "engage in assisting entities in the processing of H2 agriculture visa non immigrant workers."

57.     In January 2018, Ms. Macias attended WAFLA's annual training in Wenatchee, Washington and was a featured speaker.

58.     In 2006, Munger used the H-2A agricultural labor program to import foreign labor to harvest blueberries in California.

59.     Upon information and belief, after 2006 Munger did not import H-2A workers to work in the California blueberry harvest until 2017.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 7

60.     In 2015 and 2016, Sarbanand or Munger hired WAFLA to import H-2A workers for its Washington state blueberry harvest.

61.     In 2017, Sarbanand stopped contracting with WAFLA and used CSI and Nidia Perez to import H-2A workers for its Washington state blueberry harvest.

62.     Prior to 2017, Munger and Sarbanand knew that H-2A foreign workers obtained non-immigrant work visas that strictly limit employment within the United States.

63.     Prior to 2017, Munger and Sarbanand knew that H-2A foreign workers employed by them in the United States could not legally leave their worksite and seek work at other farms.

64.     Prior to 2017, Munger and Sarbanand knew that H-2A foreign workers came from impoverished backgrounds.

65.     Prior to 2017, Munger and Sarbanand knew that H-2A foreign workers who were fired from their H-2A jobs in the United States would not be re-hired by Munger the following year.

66.     Prior to 2017, Munger and Sarbanand knew that H-2A foreign workers feared blacklisting from future H-2A employment in their home countries.

**Sarbanand's Use of H-2A Workers in 2015 and 2016**

67.     In 2015 and 2016, Sarbanand or Munger contracted with WAFLA to prepare and file its H-2A application with the federal government.

68.     In 2015, WAFLA applied for 248 H-2A foreign workers to harvest and pack blueberries in Washington state for Sarbanand Farms for approximately four months - from July 4 - November 2.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 8

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

69.     In 2016, WAFLA applied for 475 H-2A workers to harvest and pack blueberries in Washington state for Sarbanand Farms, nearly double the amount requested in 2015.

70.     Sarbanand ultimately filed two H-2A contracts in 2016 – one for three months (July 4-October 5), and the other for less than three months (July 23-October 15).

71.     In 2015 and 2016, upon information and belief, WAFLA contracted with CSI  to recruit H-2A workers in Mexico to fill the labor needs of Sarbanand Farms in 2015 and 2016.

72.     Plaintiffs and many of the putative class members worked as H-2A workers for Sarbanand in 2016 in Washington state from July to October.

73.     Munger's California farms, which harvest blueberries from mid-May to the end of June, did not use the H-2A program in 2015 or 2016 and none of the plaintiffs or putative class members worked at Munger's blueberry farms in California during those two years.

**Munger's 2017 California H-2A Applications**

74.     In 2017, Sarbanand and Munger ended their contractual relationships with WAFLA and decided to apply directly to the federal government to import H-2A workers.

75.     In 2017, Sarbanand and Munger decided to expand the use of H-2A workers by employing them first in California in May and June and then in Washington from July to October.

76.     In March of 2017, Munger and another entity called Crowne Cold Storage, LLC applied directly to the United States Department of Labor to bring in over five hundred (500) foreign H-2A workers to harvest and pack blueberries in California between May 15, 2017 and June 30, 2017.

77.     Cliff Woolley signed the March 2017 H-2A applications on behalf of Munger and Crowne Cold Storage.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 9

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

78.     As part of the March 2017 H-2A applications, Munger assured the federal government that it would comply with all federal and state employment laws.

79.     In 2017, Munger contracted with and paid a fee to CSI to supply Mexican H-2A workers to harvest blueberries in California and then be transferred to Sarbanand in Washington.

80.     In 2017, Crowne Cold Storage contracted with and paid a fee to CSI to supply Mexican H-2A workers to package blueberries in California and then be transferred to Sarbanand in Washington.

81.     Nidia Perez signed the contract on behalf of Crowne Cold Storage.

82.     In 2017, CSI did not register with the Washington State Department of Labor and Industries as a farm labor contractor.

83.     In 2017, Munger and Sarbanand failed to inquire from CSI whether it had a valid Washington state farm labor contractor license and review that license before using CSI's services.

84.     In 2017, CSI did not obtain a bond to operate as a licensed farm labor contractor.

85.     In 2017, Nidia Perez was the primary contact with former Sarbanand workers in Mexico and CSI.

86.     One of Ms. Perez's primary contacts at CSI was Roxana Macias.

87.     In 2017, Nidia Perez spoke with putative class members in Mexico by telephone to recruit them for the blueberry harvest.

88.     In 2017, Nidia Perez told putative class members in Mexico to go to the closest CSI office to facilitate work in the blueberry harvest.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 10

89.     In 2017, Nidia Perez provided CSI with a list of workers in Mexico for CSI to supply to harvest blueberries for Munger and package blueberries at Crowne Cold Storage.

90.     Most of the workers on that list picked blueberries at Sarbanand in 2016 under an H-2A contract that only involved work in Washington state for three months between July and October.

91.     Sarbanand or Sarbanand's agent paid a fee to Nidia Perez to recruit H-2A workers from Mexico who could work in the California blueberry harvest and then be transferred and supplied to Sarbanand in Washington.

92.     In 2017, Nidia Perez did not register with the Washington State Department of Labor and Industries as a farm labor contractor.

93.     In 2017, Nidia Perez did not obtain a bond to operate as a licensed farm labor contractor.

94.     In 2017, Sarbanand failed to inquire whether Nidia Perez had a valid Washington state farm labor contractor license and review that license before using her services.

95.     Working from that list, CSI contacted and supplied H-2A workers to Munger, Crowne Cold Storage, and Sarbanand to harvest and package blueberries in California and Washington.

96.     In May 2017, Munger and Crowne Cold Storage imported over five hundred H-2A foreign workers from Mexico to harvest and package blueberries, including the plaintiffs.

97.     All foreign H-2A workers were dependent on Munger to provide them with employment, food, shelter, and transportation.

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

98.     In 2017, a Munger manager told the foreign H-2A workers, "You came here to suffer, not for vacation."

99.     In 2017, Munger's managers routinely threatened to send foreign H-2A workers home if they did not comply with work demands.

100.    In 2017, Munger's managers routinely threatened to send foreign H-2A workers home when they complained about working conditions.

101.    In 2017, Munger managers threatened to blacklist foreign H-2A workers who were fired and sent home to Mexico.

102.    In 2017, Munger illegally terminated some foreign H-2A workers who questioned company practices and sent them back to Mexico.

103.    In 2017, Munger managers knew that if they fired a foreign H-2A worker, that worker would have to pay for his own transportation home.

104.    In 2017, Munger deducted over $12 per day from each of the H-2A foreign worker's paychecks to finance daily food needs of the workers.

105.    In 2017, Munger failed to provide sufficient food to its foreign H-2A workers working in California.

106.    In 2017, Munger instituted a ticket policy that prevented H-2A workers from obtaining sufficient food.

107.    In 2017, Munger's owners, president, and managers were aware that H-2A foreign workers were being provided insufficient and unhealthy food in California.

108.    In 2017, H-2A foreign workers complained to Munger about insufficient and unhealthy food.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 12

109.   In 2017, H-2A foreign workers became ill while employed by Munger.

110.   In 2017, Munger sent foreign H-2A workers who became ill back to Mexico and did not pay for their return transportation.

111.   In 2017, H-2A foreign workers who were injured while employed at Munger were sent back to Mexico.

112.   In 2017, Munger's H-2A foreign workers in California contributed personal funds to help fired or sick co-workers return to Mexico.

113.   In 2017, the work visas issued for each of the H-2A foreign workers indicated it was only valid from May until early July.

114.   In 2017, the H-2A foreign workers expressed concern to Munger's managers while they were in California that their visas were running out.

115.   Munger managers told the foreign H-2A workers that the visas would be extended and valid when they arrived in Washington state, however, the plaintiffs received no evidence while they were employed that the visas were extended.

**Sarbanand's 2017 Washington State H-2A Applications**

116.   Later in 2017, Munger applied to the federal Department of Labor to transfer its foreign H-2A workers from California to its subsidiary, Sarbanand Farms, in Washington state.

117.   On May 2, 2017, Cliff Woolley signed an H-2A application on behalf of Sarbanand Farms.

118.   The May 2, 2017 application sought five hundred and fifty-eight (558) foreign H-2A workers from July 10, 2017 through October 25, 2017 to harvest and pack blueberries.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 13

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

119.    On May 12, 2017, Cliff Woolley signed a second H-2A application on behalf of Sarbanand Farms seeking an additional sixty (60) foreign H-2A workers for the same time period.

120.    As part of both H-2A applications, Sarbanand included a job order written by the company containing all pay and work conditions.

121.    As part of both H-2A applications, Sarbanand assured the federal government that it would comply with all federal and state employment laws.

122.    The Department of Labor eventually approved the use of 618 foreign H-2A workers to work at Sarbanand during the 2017 blueberry harvest.

123.    At the end of the California blueberry harvest, Munger transferred hundreds of foreign H-2A workers, including the Plaintiffs, to its Sarbanand blueberry farms in Sumas, Washington.

124.    Sumas, Washington is located on the border between the United States and Canada and has a heavy Border Patrol presence, including a staffed field office less than 3 miles from the farm.

125.    Javier Sampedro, an upper-level manager at Sarbanand, routinely informed the foreign H-2A workers that he had connections with the Border Patrol.

126.    Sarbanand managers repeatedly stated the new visas would show up shortly, but the visa extensions never materialized.

127.    All foreign H-2A workers were housed in military-style bunk houses on the premises of Sarbanand Farms.

128.    Sarbanand's labor camp is surrounded by fencing.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 14

129.    Sarbanand employed a security guard at the entrance to the labor camp and had a restricted entry policy.

130.    In 2017, Sarbanand's labor camp housing did not have individual cooking facilities.

**Sarbanand's "Death Bed" No Sick Days Policy**

131.    On or about July 10, 2017, Sarbanand required all foreign H-2A workers to come to the dining hall to sign their H-2A contracts.

132.    The H-2A contracts are enforceable under Washington law.

133.    At that time and prior to the start of the 2017 blueberry harvest in Washington, Nidia Perez informed all H-2A foreign workers that "unless they were on their death bed" Sarbanand required them to work in the fields every day work was available.

134.    Ms. Perez's "death bed" speech had the intended effect of informing all the H-2A foreign workers that they were not allowed to take sick days at Sarbanand and they needed to show up for work every day or risk termination.

135.    Ms. Perez's "death bed" speech had the intended effect of informing all the H-2A foreign workers that they should not report sickness or workplace injuries to management.

**Sarbanand's Use of Illegal and Unauthorized Production Standards**

136.    Prior to the 2017 blueberry harvest in Washington, Sarbanand knew the company's H-2A job order, which the company wrote, did not have hourly or daily production standards.

137.    Prior to the 2017 blueberry harvest in Washington, Sarbanand knew the company's H-2A job order stated: "Workers may work at a sustained, vigorous pace and make

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 15

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

bona-fide efforts to work efficiently and consistently that are reasonable under the climatic and all other working conditions."

138.     Prior to and throughout the 2017 blueberry harvest in Washington, Sarbanand routinely informed all H-2A foreign workers they needed to pick two boxes of blueberries an hour or they would be fired and sent back to Mexico.

139.     In late July of 2017, with one of the Munger brothers and Robert Hawk present, Nidia Perez reiterated to all the H-2A foreign workers that they had to pick two boxes of blueberries an hour or face termination.

140.     Despite not having approved production standards in its Washington H-2A job order, Sarbanand's managers put tremendous daily pressure on the foreign H-2A workers to pick two boxes of blueberries per hour.

141.     As was the company practice in California, Sarbanand's managers in Washington routinely threatened to send the foreign H-2A workers home if they did not comply with work demands.

142.     As was the company practice in California, Sarbanand's managers in Washington routinely threatened to send the foreign H-2A workers home when they complained about working conditions.

143.     In 2017, Sarbanand managers knew that if they fired an H-2A foreign worker, the worker would have to pay for his own transportation home.

**Sarbanand Provided Inadequate and Unhealthy Food**

144.     Prior to the 2017 blueberry harvest in Washington, Sarbanand knew it had a contractual obligation to provide three meals a day to all foreign H-2A workers, as stated in Section 14 of the 2017 job order.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 16

145.    Pursuant to the job order written by Sarbanand, the company deducted $12.07 per day from the paychecks of all foreign H-2A workers to pay for these meals.

146.    In 2017, Sarbanand failed to provide sufficient food to its foreign H-2A workers working in Washington and provided only uniform, meager portions to all.

147.    In 2017, Sarbanand ran out of food during some meal periods so not all foreign H-2A workers were fed.

148.    In 2017, Sarbanand required foreign H-2A workers to line up to get their meals.

149.    In 2017, Sarbanand manager's used a colored ink marker to put an "X" on the hand of each foreign H-2A worker's hand to limit their access to one uniform portion each meal.

150.    In 2017, Sarbanand's managers threatened H-2A foreign workers with termination if they violated the one portion policy.

151.    In 2017, Sarbanand provided unhealthy food to its foreign H-2A workers.

152.    In 2017, Munger's owners, president, and managers were aware that foreign H-2A workers were being provided insufficient and unhealthy food in Washington.

153.    In 2017, foreign H-2A workers complained to Sarbanand about inadequate and unhealthy food.

154.    In 2017, Sarbanand's managers threatened to send workers back to Mexico who complained about inadequate or unhealthy food.

155.    In 2017, Sarbanand had a company policy that banned foreign H-2A workers from bringing additional food into the fields.

156.    In 2017, when foreign H-2A workers tried to eat under the limited shade of blueberry bushes, Sarbanand managers demanded they exit the fields and threatened to fire them.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 17

157.    In 2017, foreign H-2A workers were forced to spend personal funds above and beyond the $12.07 deducted from their paychecks to supplement inadequate meals provided by Sarbanand.

**Strike for Improved Working Conditions and Safety**

158.    In July and early August of 2017, the foreign H-2A workers worked in sunbaked fields with hazy smoke from nearby forest fires.

159.    In July and early August of 2017, Sarbanand required foreign H-2A workers to work 12-hour shifts harvesting blueberries.

160.    During this time period, along with inadequate and unhealthy food, the foreign H-2A workers were not provided with any shade from the sun and Sarbanand failed to supply adequate water in the fields.

161.    During this time period, foreign H-2A workers began to suffer various symptoms of heat stress including: dizziness, headaches, partial facial paralysis, and others.

162.    In light of Sarbanand's "death bed" no sick day policy, foreign H-2A workers did not regularly report heat stress symptoms.

163.    One foreign H-2A worker in particular, Honesto Ibarra, was suffering tremendously.

164.    On Wednesday, August 2, 2017, Honesto Ibarra was taken by ambulance to an emergency room after a Sarbanand office worker called 911.

165.    Late at night on Thursday, August 3, 2017, foreign H-2A workers gathered together to determine what happened to Honesto Ibarra and discuss concerns about their own personal safety at work.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 18

166.    Javier Sampedro, an upper-level manager at Sarbanand, was present to try and answer the workers' questions, but his explanations were insufficient to allay their fears.

167.    Many of the foreign H-2A workers gathered that night decided to go on strike the following day to improve their working conditions for themselves and all other farm workers at Sarbanand.

168.    Javier Sampedro was present throughout this meeting and heard the H-2A worker's strike plan.

169.    On Friday, August 4, 2017, approximately 60 foreign H-2A workers stayed in their cabins and refused to work in an effort to improve safety and health for themselves and other workers at Sarbanand.

170.    On the morning of August 4, 2017, one of the striking workers called the United States Department of Labor ("DOL") and requested an investigation.

171.    Later on August 4, 2017, investigators from the Department of Labor in Seattle arrived at the Sarbanand labor camp and spoke to workers.

172.    On August 4, 2017, the DOL investigators also spoke with Robert Hawk and Nidia Perez.

173.    On Saturday morning, August 5, 2017, the approximately 60 foreign H-2A workers ended their strike and showed up ready for work.

174.    Instead of allowing the striking workers to return to work, Sarbanand ordered all the foreign H-2A workers to line up by work crew and methodically called out the name of each striking worker and told them to report to the dining hall.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 19

175.    Sarbanand then sent all non-striking H-2A foreign workers into the fields to begin work.

176.    Once inside the dining hall, Robert Hawk, through his translator, Nidia Perez, informed all the H-2A foreign workers who had engaged in the strike the previous day that they were immediately terminated for insubordination and they had one hour to gather their belongings and leave the labor camp.

177.    Nidia Perez threatened the foreign H-2A that Sarbanand would contact the police and immigration authorities if they did not vacate the housing within one hour.

178.    To further intimidate the workers, a Sarbanand employee filmed the meeting.

179.    On August 5, 2017, neither Robert Hawk nor Nidia Perez offered to pay the transportation or meal costs of any of the terminated H-2A workers to return to Mexico.

180.    Mr. Hawk, Ms. Perez, and Mr. Sampedro oversaw the extra-judicial eviction of the terminated H-2A workers by standing in front of their housing and periodically announcing the remaining time.

181.    Prior to the termination, Sarbanand called the Sumas police department to inform them of the company's termination and eviction plans.

182.    Prior to the termination, Sarbanand called 911 to alert the Whatcom County Sheriff's Department of the company's decision to terminate approximately 70 H -2A workers for non-performance.

183.    At no time did Sarbanand inform the terminated H-2A workers that they could not be forcibly and summarily evicted from their housing under threat of arrest without due process of law.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 20

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

184.    At no time did Sarbanand tell the terminated H-2A workers that they could not be summarily evicted by the police or immigration officers without a court order.

185.    Sarbanand knowingly violated Washington law to inflict serious financial harm on the foreign H-2A workers who engaged in concerted activity on Friday, August 4, 2017.

186.    Sarbanand knowingly violated Washington law in order to immediately disrupt and eliminate all concerted activities of its foreign H-2A work force to keep them working in the fields harvesting blueberries.

187.    Sarbanand knowingly violated Washington law in order to control and intimidate its remaining foreign H-2A workers to remain working in the fields in fear and under the threat of serious financial harm.

188.    On Sunday, August 6, 2017, Honesto Ibarra died at Harborview Medical Center in Seattle.

189.    On Tuesday, August 8, 2017, Roxana Macias, CSI's Washington state representative, showed up at the make-shift tent camp to talk with the fired and evicted workers on behalf of both Sarbanand and Munger.

**Factual Allegations of Plaintiff Rosas**

190.    In 2016, Plaintiff Rosas picked blueberries for three months in Washington state at Sarbanand Farms as an H-2A worker between July and October.

191.    In 2017, CSI and Nidia Perez recruited Plaintiff Barbaro Rosas in Mexico to work as an H-2A agricultural worker to harvest blueberries for five months in California and Washington.

192.    CSI and Nidia Perez failed to exhibit a current Washington farm labor contractor's license to Plaintiff Rosas.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 21

193.   CSI and Nidia Perez failed to disclose the amount of its bond and the existence and amount of any claims against the bond to Plaintiff Rosas.

194.   CSI and Nidia Perez failed to provide to Plaintiff Rosas a written statement of the working conditions in Washington on a form prescribed by the Washington State Department of Labor and Industries.

195.   CSI provided Plaintiff Rosas with a one-page document with the CSI Visa Processing logo at the top that did not contain all the information required on the L&I form.

196.   The logo matches the logo on the back of business card for Ms. Macias.

197.   The one-page document had blank lines to fill in minimal work information including the name of the owner or company, the place and type of employment, the period of the contract, and the base pay.

198.   The one-page document given to Mr. Rosas indicates that the contract will be for five months, indicating that Mr. Rosas would work both in California and Washington in 2017.

199.   CSI and Nidia Perez failed to inform Plaintiff Rosas he would be required to pick two boxes of blueberries an hour at Sarbanand Farms in Washington or face termination.

200.   CSI and Nidia Perez failed to inform Plaintiff Rosas that he would have to pay for his own meals above and beyond the $12.07 Sarbanand would deduct from his paycheck.

201.   Plaintiff Rosas lives in impoverished town in Nayarit, Mexico.

202.   Plaintiff Rosas comes to the United States to work as there is insufficient work in his town to support his family.

203.   Plaintiff Rosas worked at Munger harvesting blueberries in California in May and June of 2017.

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

204.    Munger transferred Plaintiff Rosas to Sumas, Washington to pick blueberries for Sarbanand Farms.

205.    Throughout his employment with Munger and Sarbanand, Plaintiff Rosas was repeatedly threatened with termination and being sent back to Mexico.

206.    Throughout his employment with Munger and Sarbanand, Plaintiff Rosas did not receive sufficient or adequate meals in return for the money that was deducted from his wages.

207.    Throughout his employment with Sarbanand, Plaintiff Rosas was told he had to pick two boxes of blueberries an hour or face termination and be sent back to Mexico.

208.    Plaintiff Rosas provided labor to Sarbanand Farms under threat of termination and deportation.

209.    Plaintiff Rosas provided labor to Sarbanand due to fear that he would suffer serious financial harm if he did not meet production standards.

210.    Plaintiff Rosas provided labor to Sarbanand due to fear that termination would lead to blacklisting from future H-2A employment in the United States.

211.    After Honesto Ibarra was hospitalized, Plaintiff Rosas engaged in a one day strike on Friday, August 4, 2017 to improve working conditions for himself and others at Sarbanand Farms.

212.    Sarbanand fired Plaintiff Rosas and summarily evicted him from his labor camp housing on Saturday, August 5, 2017 for engaging in concerted activity.

213.    Sarbanand told Plaintiff Rosas he had to leave the labor camp within one hour of his termination and threatened to call the police if he failed to comply.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 23

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

214.    Based on the threat to call the police, Plaintiff Rosas left his labor camp housing with all his belongings.

215.    Plaintiff Rosas had nowhere to go after he was summarily evicted.

216.    Plaintiff Rosas spent 12 days stranded in a make-shift tent camp before returning to Mexico.

**Factual Allegations of Plaintiff Tapia**

217.    In 2016, Plaintiff Tapia picked blueberries for three months in Washington state for Sarbanand Farms as an H-2A worker between July and October.

218.    In 2017, CSI and Nidia Perez, recruited Plaintiff Guadalupe Tapia in Mexico to work as an H-2A agricultural worker to harvest blueberries for five months in California and Washington.

219.    CSI and Nidia Perez failed to exhibit a current Washington farm labor contractor's license to Plaintiff Tapia.

220.    CSI and Nidia Perez failed to disclose the amount of its bond and the existence and amount of any claims against the bond to Plaintiff Tapia.

221.    CSI and Nidia Perez failed to provide to Plaintiff Tapia a written statement of the working conditions in Washington on a form prescribed by the Washington State Department of Labor and Industries.

222.    CSI provided Plaintiff Tapia with a one-page document with the CSI Visa Processing logo at the top that did not contain all the information required on the L&I form.

223.    The logo matches the logo on the back of business card for Ms. Macias.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 24

224.    The one-page document had blank lines to fill in minimal work information including only the name of the owner or company, the place and type of employment, the period of the contract, and the base pay.

225.    On the one-page document given to Mr. Tapia, the period of the work contract was left blank but he understood it would be for five months.

226.    The one-page document provided to Plaintiff Tapia's brother, Jesus Tapia, states that the period of the contract is just under five months (May 16 – Oct. 1) indicating he was being recruited for work in Washington state.

227.    CSI and Nidia Perez failed to inform Plaintiff Tapia he would be required to pick two boxes of blueberries an hour at Sarbanand Farms in Washington or face termination.

228.    CSI and Nidia Perez failed to inform Plaintiff Tapia that he would have to pay for his own meals above and beyond the $12.07 Sarbanand would deduct from his paycheck. Plaintiff Tapia lives in an impoverished town in Guanajuato, Mexico.

229.    Plaintiff Tapia comes to the United States to work as there is insufficient work in his town to support his family.

230.    Plaintiff Tapia worked at Munger harvesting blueberries in California in May and June of 2017.

231.    Munger transferred Plaintiff Tapia to Sumas, Washington to pick blueberries for Sarbanand Farms.

232.    Throughout his employment with Munger and Sarbanand, Plaintiff Tapia was repeatedly threatened with termination and being sent back to Mexico.

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

233.    Throughout his employment with Munger and Sarbanand, Plaintiff Tapia did not receive sufficient or adequate meals in return for the money that was deducted from his wages.

234.    Throughout his employment with Sarbanand, Plaintiff Tapia was told he had to pick two boxes of blueberries an hour or face termination and be sent back to Mexico.

235.    Plaintiff Tapia provided labor to Sarbanand under threat of termination and deportation.

236.    Plaintiff Tapia provided labor to Sarbanand due to fear that he would suffer serious financial harm if he did not meet production standards.

237.    Plaintiff Tapia provided labor to Sarbanand due to fear that termination would lead to blacklisting from future H-2A employment in the United States.

238.    After Honesto Ibarra was hospitalized, Plaintiff Tapia engaged in a one day strike on Friday, August 4, 2017 to improve working conditions for himself and others at Sarbanand Farms.

239.    Sarbanand fired Plaintiff Tapia and summarily evicted him from his labor camp housing on Saturday, August 5, 2017 for engaging in concerted activity.

240.    Sarbanand told Plaintiff Tapia he had to leave the labor camp within one hour of his termination and threatened to call the police and immigration if he failed to comply.

241.    Based on Sarbanand's threat to call the police and immigration, Plaintiff Tapia left his labor camp housing with all his belongings.

242.    Plaintiff Tapia had nowhere to go after he was summarily evicted.

243.    Plaintiff Tapia spent 12 days stranded in a make-shift tent camp before returning to Mexico.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 26

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

244.    As a result of Defendants' actions alleged herein, the Plaintiffs suffered economic damages.

245.    As a result of actions by Defendants Munger and Sarbanand alleged herein, the Plaintiffs suffered emotional distress damages.

## CLASS ACTION ALLEGATIONS

A.    PLAINTIFF CLASS – ALL SARBANAND FOREIGN H-2A WORKERS

246.    Plaintiffs Barbaro Rosas and Guadalupe Tapia ("Representative Plaintiffs") bring this action on their own behalf and on behalf of a class of persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), consisting of: All Mexican nationals who worked at Sarbanand Farms, LLC in Sumas, Washington picking blueberries pursuant to an H-2A contract that offered employment from July 2017 through October 2017.

247.    The class is so numerous that joinder of all members is impracticable. The exact size of the class is not known; however on information and belief the class consists of over 600 persons.

248.    The representative Plaintiffs are represented by experienced counsel who will vigorously prosecute the litigation on behalf of the class.

249.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making declaratory and injunctive relief appropriate with respect to the class as a whole.

250.    Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 27

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

a.      Members of the class do not have an overriding interest in individually controlling the prosecution of separate actions:

b.      No litigation concerning this controversy has been commenced by any member of the class;

c.      Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case; and

d.      A class action can be managed without undue difficulty because the issues presented are common to the class, Defendants are required to maintain detailed records concerning each member of the class, and Plaintiffs' counsel have experience prosecuting cases of this nature.

251.    Common questions of law and fact include:

a.      Whether Defendants Munger and Sarbanand had a scheme or pattern of threatening H-2A foreign workers to cause them to believe that, if they did not perform labor or services for Sarbanand, they would suffer serious financial harm in violation of 18 U.S.C. § 1589(a)(4);

b.      Whether Defendants Munger and Sarbanand abused the laws of Washington state to obtain the continued labor of its foreign H-2A workers in violation of 18 U.S.C. §1589(a)(3);

c.      Whether Defendants violated Washington's Farm Labor Contractor Act, RCW 19.30.

d.      Whether Defendants Munger and Sarbanand had a common practice of mistreating foreign H-2A workers created a hostile working environment on the basis of national origin in violation of the Washington Law Against Discrimination, RCW 49.60.180(3);

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 28

252.    The claims of Representative Plaintiffs are typical of the claims of the Plaintiff class they seek to represent, and they will fairly and adequately protect the interests of the class.

B.    PLAINTIFF SUBCLASS – TERMINATED AND EVICTED H-2A WORKERS

253.    Plaintiffs Barbaro Rosas and Guadalupe Tapia seek certification of an additional subclass on behalf of all persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), consisting of: All H-2A workers who were terminated and evicted from Sarbanand Farms, LLC on August 5, 2017.

254.    The class is so numerous that joinder of all members is impracticable. The exact size of the class is not known; however on information and belief the class consists of over 60 persons.

255.    The representative Plaintiffs are represented by experienced counsel who will vigorously prosecute the litigation on behalf of the class.

256.    Defendants Munger and Sarbanand have acted or refused to act on grounds generally applicable to the subclass, thereby making declaratory and injunctive relief appropriate with respect to the subclass as a whole.

257.    Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

        a)    Members of the class do not have an overriding interest in individually controlling the prosecution of separate actions;

        b)    No litigation concerning this controversy has been commenced by any member of the class;

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 29

c)      Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case; and

d)      A class action can be managed without undue difficulty because the issues presented are common to the class, Defendants are required to maintain detailed records concerning each member of the class, and Plaintiffs' counsel have experience prosecuting cases of this nature.

258.    Common questions of law and fact include:

a)      Whether Defendants Munger and Sarbanand engaged in a common practice that illegally retaliated against foreign H-2A workers who engaged in concerted activity to improve their working conditions in violation of public policy and Washington's Little Norris-LaGuardia Act RCW 49.32.020;

b)      Whether Defendants Munger and Sarbanand engaged in the common practice of illegally evicting foreign H-2A workers who engaged in concerted activity under threat of arrest by police or immigration authorities in violation of Washington's landlord-tenant and property laws.

259.    The claims of the Representative Plaintiffs are typical of the claims of the subclass they seek to represent, and they will fairly and adequately protect the interests of the class.

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

**CAUSES OF ACTION**

A.     PLAINTIFF CLASS – ALL SARBANAND FOREIGN H-2A FIELD WORKERS

**TVPA - 18 U.S.C. § 1589(a)(4)**

260.     Defendants Munger and Sarbanand engaged in a scheme or pattern of threatening foreign H-2A workers to cause them to believe that, if they did not perform labor or services for Sarbanand, they would suffer serious financial harm in violation of 18 U.S.C. § 1589(a)(4).

**TVPA - 18 U.S.C. § 1589(a)(3)**

261.     Defendants Munger and Sarbanand engaged in a common practice that abused the laws of Washington state to obtain the continued labor of its foreign H-2A workers in violation of 18 U.S.C. §1589(a)(3).

**WASHINGTON FARM LABOR CONTRACT ACT – RCW 19.30**

262.     Defendants Munger and Sarbanand knowingly used the services of an unlicensed farm labor contractor in 2017 in violation of RCW 19.30.200.

263.     Defendants CSI and Nidia Perez failed to obtain and carry a current farm labor contractor's license at all times and exhibit it to the Plaintiffs in violation of RCW 19.30.110(1).

264.     Defendants CSI and Nidia Perez failed to obtain a bond and disclose the existence and amount of that bond to the Plaintiffs in violation of RCW 19.30.110(2).

265.     Defendants CSI and Nidia Perez failed to furnish to the Plaintiffs a written statement on the form prescribed by the Washington State Department of Labor and Industries describing the compensation to be paid and other terms and conditions of employment in violation of RCW 19.30.110(7).

266.     Defendants CSI and Nidia Perez made or caused to be made false, fraudulent or misleading representations concerning the terms or conditions of employment when each of them

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 31

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

failed to inform the Plaintiffs of daily production standard requirements in violation of RCW 19.30.120(2).

267.     Defendants CSI and Nidia Perez made or caused to be made false, fraudulent or misleading representations concerning the terms or conditions of employment when each of them failed to inform the Plaintiffs that they would have to pay for their own food in addition to having $12.07/day deductions from their wages in violation of RCW 19.30.120(2).

**WASHINGTON LAW AGAINST DISCRIMINATION – RCW 49.60.180(3)**

268.     Defendants Munger and Sarbanand had a common practice of mistreating its foreign H-2A workforce that created a hostile work environment based on national origin and violated the Plaintiffs' right to be free from discrimination in employment in violation of RCW 49.60.180(3).

**WASHINGTON CONTRACT LAW**

269.     Defendants Munger and Sarbanand breached their contractual obligation to allow H-2A foreign worker to work at a pace that was "reasonable under the climatic and all other working conditions" when they engaged in the common practice of imposing production standards requiring workers to pick two boxes of blueberries per hour.

270.     Defendants Munger and Sarbanand breached their duty of good faith and fair dealing when they engaged in the common practice of imposing hourly production standards requiring workers to pick two boxes of blueberries per hour in contrast to the plain language of its 2017 job orders.

271.     Defendants Munger and Sarbanand breached their contractual obligation to provide three adequate meals per day to foreign H-2A workers pursuant to its 2017 job orders.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 32

272.     Defendants Munger and Sarbanand breached their duty of good faith and fair dealing when they failed to provide three adequate meals per day to foreign H-2A workers.

B.     PLAINTIFF SUBCLASS – TERMINATED AND EVICTED H-2A WORKERS

**WASHINGTON'S LITTLE NORRIS-LAGUARDIA ACT - RCW 49.32.020**

273.     Defendants Munger and Sarbanand engaged in the common practice of illegally retaliating against H-2A foreign workers who engaged in concerted activity to improve their working conditions in violation of public policy and Washington's Little Norris-LaGuardia Act RCW 49.32.020.

**WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POICY**

274.     The actions of Defendants Munger and Sarbanand in terminating the Plaintiff subclass also amounted to a wrongful discharge in violation of public policy under Washington common law.

**WRONGFUL EVICTION**

275.     Defendants Munger and Sarbanand engaged in the common practice of illegally evicting H-2A foreign workers who engaged in concerted activity under threat of arrest by police or immigration authorities in violation of Washington's landlord-tenant and property laws.

**PRAYER FOR RELIEF**

Plaintiffs ask this Court to grant them the following relief:

1.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3);

2.     Designate the named Plaintiffs as class representatives pursuant to Fed. R. Civ. P. 23(a);

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 33

3.      Appoint Columbia Legal Services and Schroeter Goldmark & Bender as class counsel pursuant to Fed. R. Civ. P. 23(g);

4.      Enter a permanent injunction against Defendants Munger and Sarbanand from interfering with the rights of the Plaintiff class to engage in concerted activity under Washington's Little Norris-LaGuardia Act:

5.      Enter a permanent injunction against Defendants Munger and Sarbanand from threatening H-2A foreign workers with deportation to coerce them to continue providing labor to the company;

6.      Enter a permanent injunction against Defendants Munger and Sarbanand from informing H-2A foreign workers they must work in the fields unless they are on their death bed;

7.      Enter a permanent injunction against Defendants Munger and Sarbanand from imposing production standards on persons hired under an H-2A contract unless approved through annual wage and working condition surveys of Washington agricultural workers;

8.      Enter a permanent injunction against Defendants Munger and Sarbanand from threatening to evict labor camp occupants under threat of arrest by the police or immigration authorities;

9.      Enter a permanent injunction requiring Defendants Munger and Sarbanand to inform all H-2A foreign workers that under Washington law they can only be evicted after notice, a court hearing, and a neutral judge signs a court order;

10.     Disgorge from Defendants Munger and Sarbanand and award to the Plaintiffs and other members of the class all profits gained from the forced labor Defendants Munger and Sarbanand imposed on H-2A foreign workers, including the imposition of illegal production standards, pursuant to 18 U.S.C. §1595(a) and Washington contract law;

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 34

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

11.     Award punitive damages to the Plaintiffs and other members of the class pursuant to 18 U.S.C. §1595(a) as Defendants Munger and Sarbanand recklessly violated Plaintiffs' rights by abusing its authority over its H-2A workforce;

12.     Award to the Plaintiffs and other members of the class actual damages or $500 per person per violation, whichever is greater, for each FLCA violation pursuant to RCW 19.30.170(2).

13.     Award to the Plaintiffs and other members of the class sums Defendants deducted from their paychecks for three meals per day pursuant to Washington contract law;

14.     Award to the Plaintiffs and other members of the subclass lost wages pursuant to 18 U.S.C. §1595(a), RCW 49.32.010, and Washington common law;

15.     Award attorney fees and costs pursuant and 18 U.S.C. §1595(a), RCW 49.60.030(2), and, RCW 19.30.170(1); and,

16.     Grant other further relief as just and appropriate.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 35

Columbia Legal Services
300 Okanogan Avenue, Suite 2A
Wenatchee, WA  98801
(509) 662-9681

DATED this 7th day of March, 2018.

By: s/ Joachim Morrison
By: s/ Tony Gonzalez
    Joachim Morrison, WSBA# 23094
    Tony Gonzalez, WSBA #47771
    COLUMBIA LEGAL SERVICES
    300 Okanogan Avenue, Suite 2A
    Wenatchee, WA  98801
    (509) 662-9681
    Email: joe.morrison@columbialegal.org
          tony.gonzalez@columbialegal.org
    *Attorneys for Plaintiffs*

By: s/ Bernardo Cruz
By: s/ Lori Jordan Isley
    Lori Jordan Isley, WSBA #21724
    Bernardo Cruz, WSBA #51382
    COLUMBIA LEGAL SERVICES
    6 South Second Street, Suite 600
    Yakima, WA  98901
    (509) 575-5593
    Email: lori.isley@columbialegal.org
          bernardo.cruz@columbialegal.org
    *Attorneys for Plaintiffs*

By: s/ Adam Berger
By: s/ Lindsay Halm
    Adam Berger, WSBA# 20714
    Lindsay Halm, WSBA# 37141
    SCHROETER GOLDMARK & BENDER
    810 Third Avenue, Suite 500
    Seattle, Washington 98104
    (206) 622-8000
    Email: berger@sgb-law.com
          halm@sgb-law.com
    *Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 36

CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| David N. Bruce | dbruce@sbwllp.com; eservice@sbwllp.com |
| Miles A. Yanick | myanick@sbwllp.com; eservice@sbwllp.com |
| C. N. Coby Cohen | ccohen@swbllp.com; eservice@sbwllp.com |
| Adam J. Berger | berger@sgb-law.com; cronan@sb-law.com; molina@sgb-law.com; oneil@sgb-law.com; whalen@sgb-law.com |
| Lindsay Halm | halm@sgb-law.com |
| Bernardo Cruz | Bernardo.cruz@columbialegal.org; elvia.bueno@columbialegal.org; cheli.bueno@columbialegal.org |
| Tony Gonzalez | tony.gonzalez@columbialegal.org; ivy.rosa@columbialegal.org |
| Lori Isley | lori.isley@columbialegal.org; rachael.pashkowski@columbialegal.org |
| Joachim Morrison | joe.morrison@columbialegal.org; rachael.pashkowski@columbialegal.org |

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM?ECF participants: None.

Rachael Pashkowski

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF - 37