THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARBARO ROSAS and GUADALUPE TAPIA, as individuals and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>SARBANAND FARMS LLC, *et al.*,<br><br>Defendants. | CASE NO. C18-0112-JCC<br><br>ORDER |

This matter comes before the Court on Defendant CSI Visa Processing S.C.'s ("CSI") motion to dismiss for lack of personal jurisdiction (Dkt. No. 86). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

## I. BACKGROUND

Plaintiffs bring this class action arising out of the Defendants' recruitment, employment, and treatment of foreign H-2A farm workers. (Dkt. No. 12 at 1.) Plaintiffs allege that Defendant CSI violated the Washington Farm Labor Contractors Act ("FLCA") by failing to obtain and carry a current farm labor contractor's license at all times and exhibit it to Plaintiffs; failing to obtain a bond and disclose the existence and amount of that bond to Plaintiffs; failing to furnish Plaintiffs with a written statement on the form prescribed by the Washington State Department of

Labor and Industries describing the compensation to be paid and terms and conditions of employment; and by making or causing to be made false, fraudulent, or misleading representations to Plaintiffs concerning the terms and conditions of employment. (*Id*. at 31–32.)

Defendant CSI is a Mexican visa processing company with its principal place of business in Durango, Mexico. (Dkt. No. 86 at 8.) It "processes visa applications at the request of employers across the United States," and describes itself as "the largest H2 [visa] processing company in Mexico, assisting hundreds of employers across the United States." (*Id*. at 8; Dkt. No. 96-2 at 2). Defendants Sarbanand Farms and Munger Bros. (collectively, "Growers") share common ownership and have the same CEO. (Dkt. Nos. 11, 18 at 16, 68 at 2–3.) Defendant Nidia Perez acted as an employee and agent of both Defendant Sarbanand Farms and Defendant Munger Bros. "for purposes of any allegations against her concerning employees hired to work on behalf of Munger Bros. . . . [and] Sarbanand Farms through the H-2A visa program . . . during the 2017 blueberry harvest in Sumas, Washington." (Dkt. No. 19 at 3; *see also* Dkt. No. 18 at 3.)[1]

Defendant CSI has historically engaged in the solicitation of business in Washington through WAFLA, an association of Pacific Northwest growers: Defendant CSI was a sponsor of WAFLA's annual conferences, and worked with WAFLA to provide workers to Washington growers through the 2017 season. (*See* Dkt. Nos. 12 at 9, 85-4 at 9.) In 2015 and 2016, Defendant Sarbanand Farms contracted with WAFLA to provide H-2A visa workers for the blueberry harvesting season in Sumas, Washington. (Dkt. Nos. 68 at 2, 85-11, 85-12, 95 at 5.) WAFLA in turn retained Defendant CSI to supply workers from Mexico to work for Defendant Sarbanand Farms. (*See* Dkt. No. 85-15.)

In 2017, Growers worked directly with Defendant CSI "to locate recruit, and supply the

---

[1] Although she was employed by Defendant Munger Bros., Defendant Perez and other employees of Defendant Munger Bros. were regarded as employees of Defendant Sarbanand Farms by WAFLA and Defendant CSI. (*See* Dkt. Nos. 85-18–18-21, 85-24 at 3.)

workers needed to harvest blueberries in California and Washington." (Dkt. No. 68 at 2–3; *see also* Dkt. No. 85-25) (PowerPoint setting forth number of workers needed by Defendant Sarbanand Farms in Sumas, Washington and stating that Defendant CSI would recruit workers in Mexico). Defendant CSI entered into a contract with Defendant Sarbanand Farms to provide professional services in recruiting and processing H-2A visa applicants for work in Washington. (Dkt. No. 96-18 at 14–22.) Defendant CSI processed 103 H-2A visa applications for work in Washington on behalf of Defendant Sarbanand Farms for the 2017 harvesting season. (Dkt. No. 89 at 2.)

Plaintiffs filed a class action lawsuit against Growers, Defendant Nidia Perez, and Defendant CSI. (Dkt. No. 12.) Plaintiffs assert that Defendant CSI violated various provisions of the Washington Farm Labor Contractors Act, Wash. Rev. Code. §§ 19.30 *et seq*. (*Id*. at 31–32.) Defendant CSI requests that the Court dismiss it from this lawsuit for lack of personal jurisdiction. (Dkt. No. 86 at 7.)

## II. DISCUSSION

### A. Motion to Dismiss Standard of Review

Claims against a defendant must be dismissed when a court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant seeks dismissal on this ground, the plaintiff must show that the exercise of jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "[I]n the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts;" in assessing this showing, the Court must take any uncontroverted allegations in the plaintiff's complaint as true and resolve any conflicts between the facts in the documentary evidence in the plaintiff's favor. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

### B. Personal Jurisdiction

When determining whether the exercise of personal jurisdiction over a defendant is appropriate, federal courts apply the law of the state in which they sit; in Washington, courts are

authorized to exercise jurisdiction "over a nonresident defendant to the extent permitted by the due process clause of the United States Constitution." *SeaHAVN, Ltd. v. Glitnir Bank*, 226 P.3d 141, 149 (Wash. Ct. App. 2010). Thus, the only question for the Court is whether the exercise of jurisdiction over Defendant CSI comports with the limitations imposed by due process. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984).

Due process permits a court to "subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Fair play and substantial justice mandate that a defendant has minimum contacts with the forum state before it may be hailed into a court in that forum. *Int'l Shoe*, 326 U.S. at 316. The extent of these contacts can result in either general or specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If the requirements for either are met, a court may properly exercise jurisdiction over the parties. *Helicopteros*, 466 U.S. at 413–14.

          1.     <u>General Jurisdiction</u>

General jurisdiction is properly exercised when a party engages in "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Here, Defendant CSI's contacts with Washington are insufficient to support an exercise of general jurisdiction: it has no business offices or exclusive agents in Washington, it pays no taxes in Washington, and it is not registered to do business here. (*See* Dkt. No. 86); *see also Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990), *overruled on other grounds by* 499 U.S. 585 (1991). Further, Plaintiff does not allege that the Court may properly exercise general jurisdiction over Defendant CSI. (Dkt. No. 95 at 11.) For these reasons, the Court FINDS that it does not have general personal jurisdiction over Defendant CSI.

//

2. Specific Jurisdiction

Specific jurisdiction is properly exercised when a defendant has "purposefully [availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Nicastro*, 564 U.S. at 877 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This requirement ensures that defendants will not be "haled into a jurisdiction through random, fortuitous, or attenuated contacts." *Zeigler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). The Ninth Circuit uses a three-prong test to determine whether the exercise of specific jurisdiction is appropriate:

1. The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2. [T]he claim must be one which arises out of or relates to the defendant's forum-related activities; and

3. [T]he exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The Court addresses each prong in turn.

*a. Purposeful Availment*

In cases sounding in contract or arising out of contractual relations, the court "typically inquire[s] whether a defendant 'purposefully avail[ed] itself of the privilege of conducting activities' or 'consummat[ed] [a] transaction in the forum,' focusing on activities such as delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 802). As Plaintiff alleges that Defendant CSI violated the FLCA, the Court will consider Defendant CSI's contacts with Washington using the purposeful availment analysis.[2]

---

[2] In cases regarding intentional torts, courts typically apply a purposeful direction analysis. *Schwarzenegger*, 347 F.3d at 802. However, the claims made against Defendant CSI in this case are based in contract, and thus the Court will apply the purposeful availment analysis.

ORDER
C18-0112-JCC
PAGE - 5

The Ninth Circuit has held that "a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business." *Carnival Cruise Lines*, 897 F.2d at 381. While Defendant CSI repeatedly states that its work is performed completely in Mexico, its solicitation of Washington growers and resulting contractual agreements for Defendant CSI constitute purposeful availment of the Washington market. (*See* Dkt. No. 86 at 8–11.) Here, Defendant CSI has engaged in the solicitation of business in Washington through WAFLA, as it was a sponsor at WALFA's annual conferences and coordinated with WAFLA to provide H-2A visa workers to Washington growers through 2017. (*See* Dkt. Nos. 12 at 9, 85-4 at 9.)

Defendant CSI maintains that "[o]ccasional meetings within the forum state, such as [its] attendance and participation in wafla events, do not create a substantial connection" with Washington; however, this is a misrepresentation of Defendant CSI's connections with WAFLA. In 2018, Defendant CSI was a "main sponsor" of WAFLA. (Dkt. No. 96-3 at 2.) This ensured Defendant CSI "[r]ecognition on conference promotional materials and emails;" "[p]rominent signage and recognition throughout [the] conference," including "packet inserts," personalized signage, and "general sessions screens;" a booth at the conference; "future webinar sponsorship;" and a list of the conference attendees. (Dkt. No. 96-4.) Defendant CSI also sponsored WAFLA's conferences in 2016 and 2017. (Dkt. Nos. 96-4 at 2, 96-5 at 2.) This is distinguishable from *Picot*, where the defendant traveled to California at the request and expense of the plaintiffs and the Ninth Circuit found that such contacts were merely "random, fortuitous, or attenuated." 780 F.3d at 1213.

Further, the nature of Defendant CSI's contract with Defendant Sarbanand Farms evidences its purposeful availment of the Washington market. Under the contract, Defendant CSI processed H-2A visa applications to enable Mexican nationals to work for Defendant Sarbanand Farms in Washington. (*See* Dkt. Nos. 89 at 2, 96-18 at 14–22.) Thus, Defendant CSI's performance under the contract was akin to delivering goods to Washington, as its actions led

directly to workers being sent to Defendant Sarbanand Farms' facility in Sumas, Washington for work during the 2017 harvesting season. *See Yahoo! Inc.*, 433 F.3d at 1206.

Thus, Defendant CSI had significant contacts with Washington's market of growers through its regular sponsorship of WAFLA conferences and supplied goods to the Washington market in the form of H-2A visa workers, thus satisfying the purposeful availment prong. *See Schwarzenegger*, 347 F.3d at 802; *Yahoo! Inc.*, 433 F.3d at 1206.

### b. Arising Out of the Forum-Related Activity

Because the purposeful availment prong has been satisfied, the Court must now assess whether Plaintiffs' claims against Defendant CSI arise out of Defendant CSI's forum-related activity. *Schwarzenegger*, 347 F.3d at 802. At issue is the contract between Defendant Sarbanand Farms and Defendant CSI for the 2017 season. Plaintiffs have claimed that, while performing under this contract, Defendant CSI failed to comply with the provisions of the Washington Farm Labor Contractors Act. (*See* Dkt. No. 12 at 31–32.) Thus, the Court must determine whether Plaintiffs' claims against Defendant CSI would have arisen but for Defendant CSI's aforementioned contacts with Washington. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

As discussed above, Defendant CSI's contacts with Washington were substantial, as particularly evidenced by its participation in WAFLA conferences. Defendant CSI was a sponsor of WAFLA conferences from 2016 to 2018, which allowed it to solicit attendees' business through distributing promotional materials and having access to a list of attendees. (*See* Dkt. Nos. 96-3 at 2, 96-4, 96-5.) Through this availment of the Washington market, Defendant CSI supplied H-2A visa workers to many Washington agricultural entities. (*See* Dkt. Nos. 96-12–96-14.) These included Growers, who used WAFLA as an intermediary to obtain H-2A visa workers from Defendant CSI in 2015 and 2016. (Dkt. Nos. 68 at 2, 85-11, 85-12, 95 at 5.) Following their experience with Defendant CSI, facilitated by WAFLA, Growers decided to expand their use of the H-2A visa program and work directly with Defendant CSI in obtaining H-2A visa workers

for the 2017 harvesting season. (Dkt. No. 68 at 2–3; *see also* Dkt. No. 85-25.) As a result, Defendant Sarbanand Farms and Defendant CSI entered a contract for the 2017 season, under which Defendant CSI would recruit and process H-2A visa applicants to work for Defendant Sarbanand Farms in Washington. (Dkt. No. 96-18 at 14–22.) And as discussed above, Defendant CSI's performance under this contract was analogous to supplying goods to the Washington market, as it enabled Mexican nationals to work for Defendant Sarbanand Farms in Washington under H-2A visas. *See Yahoo! Inc.*, 433 F.3d at 1206.

Therefore, but for Defendant CSI's long-standing solicitation of Washington agricultural entities' business and its prior work on behalf of Growers, and but for the contract between Defendant CSI and Defendant Sarbanand governing Defendant CSI's recruitment and supplying of workers on behalf of Defendant Sarbanand Farms, Plaintiffs' claims against Defendant CSI would not have arisen. *See Ballard*, 65 F.3d at 1500. Thus, Plaintiffs' claims arose out of Defendant CSI's contacts with Washington, and the second prong of the purposeful availment test is satisfied. *See Schwarzenegger*, 347 F.3d at 802.

### c. *Fair Play and Substantial Justice*

As Plaintiffs have satisfied the first two prongs of the purposeful availment test, the burden shifts to Defendant CSI to "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). To evaluate whether the exercise of jurisdiction would be reasonable, the Court looks to:

(1) the extent of the defendant['s] purposeful interjection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum;
(3) the extent of conflict with the sovereignty of the defendant['s] state;
(4) the forum state's interest in adjudicating the dispute;
(5) the most efficient judicial resolution of the controversy;
(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
(7) the existence of an alternative forum.

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993)). Defendant CSI offers three reasons why the Court's exercise of jurisdiction over it would be unreasonable. (*See* Dkt. No. 86 at 24–25.)

First, Defendant CSI contends that it never interjected itself into Washington's affairs, as its processing of visa applications occurred solely in Mexico and it did not play a role in transporting H-2A visa workers to Washington. (*Id*. at 24.) This is unavailing. As discussed above, Defendant CSI had substantial contacts with the Washington market through its interactions with WAFLA, and the contract between it and Defendant Sarbanand Farms arose out of those contacts and Defendant CSI's existing relationship with Growers. *See supra* Section II.B.2.b.

Second, Defendant CSI asserts that the Court's exercise of jurisdiction would be unreasonable because Defendant CSI could not control where H-2A visa workers initially sent to work for Defendant Munger Bros. in California would be sent after the conclusion of their contract. (Dkt. No. 86 at 24.) But the contract at issue is that between Defendant CSI and Defendant Sarbanand Farms, under which Defendant CSI supplied H-2A visa workers directly for work in Washington. *See supra* Section II.B.2.b; (Dkt. No. 86 at 10.) Thus, the fact that H-2A visa workers initially sent to California were subsequently transferred to Washington without input from Defendant CSI dose not render the Court's exercise of jurisdiction unreasonable.

Third, Defendant CSI argues that the Court's exercise of jurisdiction would be unreasonable because of the burden placed on Defendant CSI, a foreign corporation, in litigating a case in Washington that does not relate to its direct activities. (Dkt. No. 86 at 25.) This burden is insufficient to outweigh Defendant CSI's long-running availment of the Washington market and its role in recruiting the H-2A visa workers sent directly to Washington.

Therefore, Defendant CSI has not presented a compelling case that the Court's exercise of jurisdiction over it is unreasonable and has not carried its burden under the third prong of the

purposeful availment test. *See Schwarzenegger*, 374 F.3d at 802.

## III. CONCLUSION

For the foregoing reasons, Defendant CSI's motion to dismiss for lack of personal jurisdiction (Dkt. No. 86) is DENIED.

DATED this 6th day of June 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE