THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BARBARO ROSAS and GUADALUPE TAPIA, as individuals and on behalf of all others similarly situated,

               Plaintiffs,

    v.

SARBANAND FARMS, LLC, MUNGER BROS., LLC, NIDIA PEREZ, and CSI VISA PROCESSING S.C.,

               Defendants.

CASE NO. C18-0112-JCC

ORDER

This matter comes before the Court on Plaintiffs' motion for partial summary judgment on their claims arising under the Farm Labor Contractors Act ("FLCA"), Wash. Rev. Code § 19.30.010 *et seq*. (Dkt. No. 84). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I.    BACKGROUND

The Court set forth the underlying facts of this case in a prior order and will not repeat them here. (*See* Dkt. No. 74.) On December 20, 2018, the Court certified a class and two sub-classes of Mexican national migrant farm workers. (*Id*. at 26–27.) The Court certified the class

on Plaintiffs' claims that Defendant CSI Visa Processing S.C. ("CSI") violated the FLCA and for Defendants Sarbanand Farms, LLC and Munger Bros., LLC (collectively, "Growers") resultant liability. (*Id*. at 27.)

CSI is a Mexican corporation. (Dkt. No. 89 at 1.) CSI "provides visa processing services in Mexico for various United States organizations seeking temporary farmworkers under the H-2A Guest Worker Program." (*Id*.) CSI's business activities take place in Mexico, which include processing potential farmworkers' visa applications and providing representation at the United States consulate. (*Id*. at 2.) CSI has provided recruiting and H-2A processing services to United States employers for many years. (Dkt. No. 85-1 at 2.) In its promotional materials, CSI states that it assists over 2,000 employers across the United States, including Washington (Dkt. Nos. 85-4 at 3, 100-1 at 1.) CSI employees have attended WAFLA[1] conferences in Washington, where CSI provided materials describing and promoting its services. (Dkt. No. 88 at 2; *see, e.g.*, Dkt. Nos. 85-4 at 2–14; 85-7 at 3–4; 85-8 at 2.)

CSI's visa application process generally begins when a prospective employer sends a preselected list of preferred workers to CSI. (Dkt. No. 100 at 1.) Alternatively, CSI may review applications submitted through its online registration portal to select qualified applicants for an employer. (*Id*.) CSI describes its online registration form as "essentially a self-explanatory portal that allowed workers to submit an application for an H-2A visa so that he or she could work in the United States." (*Id*. at 2.) CSI also maintains a Facebook page that directs visitors to submit an H-2A visa application through CSI's online registration portal. (*Id*. at 2.)

In 2015 and 2016, Defendant Sarbanand Farms contracted with WAFLA to obtain H-2A workers to pick blueberries in Sumas, Washington. (Dkt. Nos. 85-11–85-12.) The contracts provided that WAFLA would be responsible for maintaining contracts with third party agents

---

[1] WAFLA was formerly known as the "Washington Farm Labor Association." (*See* Dkt. No. 84 at 4.) "Wafla is an association of employers who employ seasonal workers." (Dkt. No. 88 at 2.)

that recruited or assisted foreign workers. (*Id.*) WAFLA retained CSI to obtain H-2A workers in Mexico. (Dkt. No. 85-15 at 2–7.) Beginning in 2017, Growers decided to expand their use of H-2A workers to farms in California. (Dkt. No. 68 at 2.) Growers hired Giovanna Sierra to advise them about the H-2A program, and contracted with CSI to "locate, recruit, and supply" H-2A workers for work in California and Washington. (*Id.* at 2–3; *see also* Dkt. Nos. 68 at 3, 85-25) (declaration of CEO of Defendant Munger Bros. and Growers' "H-2A Planning Overview Sumas" PowerPoint presentation slides describing CSI's role).

In 2017, CSI's Director of Compliance Roxana Macias contacted Washington's Department of Labor and Industries ("L&I") about whether CSI had to register as a farm labor contractor under the FLCA. (Dkt. No. 88 at 3.) Tisa Soeteber, an Agricultural Employment Standards Specialist for L&I, informed Macias that CSI was not required to register, and in fact could not register, as a farm labor contractor because CSI was located outside of the United States. (*Id.*; *see* Dkt. No. 88-1.) L&I's Employment Standards Program Manager David Johnson stated in his Rule 30(b)(6) deposition that Soeteber's advice was inaccurate. (*See* Dkt. Nos. 96-32 at 4–6, 106 at 6.) Johnson stated that CSI needed a license regardless of where it was located if it was conducting any farm labor contractor activity in Washington. (Dkt. No. 96-32 at 4, 6.) Johnson stated that Soeteber's advice did not have an articulable basis in law or an L&I policy. (*See id.* at 5–6.) CSI admits that it did not have a Washington farm labor contractor's license during the times relevant to this case. (*See* Dkt. Nos. 12 at 5, 31 at 4.)

In 2017, CSI processed the class members' visa applications to work in the United States under H-2A visas. (Dkt. Nos. 84 at 6–11, 89 at 1, 100 at 2.) CSI initially provided Growers with 600 H-2A workers to work in California, who were on a preselected list produced by Defendant Munger Bros. (Dkt. Nos. 100 at 2, 103 at 2.) At the end of their work in California, the 600 H-2A workers were given the choice to return to Mexico or transfer to Sumas, Washington for further work. (Dkt. No. 103 at 2.) About 500 H-2A workers elected to transfer to Washington, leaving approximately 100 open H-2A positions for work in Washington. (*Id.*)

ORDER
C18-0112-JCC
PAGE - 3

1    Defendant Sarbanand Farms contracted with CSI to locate additional workers in Mexico

2  and process their H-2A applications. (*Id.*; *see* Dkt. No. 96-18 at 14–22.) Ultimately, CSI

3  processed visas for 103 additional workers that were sent directly to Washington to work for

4  Defendant Sarbanand Farms. (Dkt. No. 103 at 2.) 36 workers were preselected by Defendant

5  Munger Bros. (*Id.*) The remaining 67 workers "contacted CSI via its website and asked to be

6  considered for an H–2A visa. CSI then processed visas on their behalf." (*Id.* at 2–3.)

7    During the visa application process, CSI informed at least some class members that they

8  would be working in Washington or would start working in California and then move to

9  Washington. (*See, e.g.*, Dkt. Nos. 85-30 at 2, 85-35 at 3, 85-36 at 5.) CSI helped workers set up

10  interviews at the U.S. consulate, (*see* Dkt. No. 84 at 12–13; *see generally* Dkt. Nos. 85-42–85-

11  46), and picked up visas for workers after they were processed. (Dkt. No. 85-41 at 2.) CSI's

12  contracts with Growers provided that CSI would receive a fee of $85 for each worker that was

13  sent to work in the United States. (*See* Dkt. No. 96-18 at 10–11, 19–20; *see also* Dkt. No. 85-25

14  at 8.) CSI received a fee when it processed visas on behalf of the workers initially sent to

15  California, but did not receive an additional fee when approximately 500 of those workers were

16  transferred from California to Washington. (Dkt. Nos. 100 at 2, 103 at 2.) CSI received a fee

17  when it processed visas on behalf of the workers sent directly to Washington to work for

18  Defendant Sarbanand Farms. (Dkt. Nos. 100 at 2–3, 100 at 2.) CSI did not play a role in

19  determining where class members were employed in the United States. (Dkt. No. 88 at 1.)

20    Plaintiffs move for summary judgment on their claims arising under the FLCA. (Dkt. No.

21  84.)

22  **II.    DISCUSSION**

23    **A.    Legal Standard**

24    "The court shall grant summary judgment if the movant shows that there is no genuine

25  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

26  Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable

inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49.)

The Court may *sua sponte* grant summary judgment in favor of a non-moving party where "it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of [the] movant's case and that the case cannot be proved if a trial should be held . . . ." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) (examining cases). Before granting summary judgment *sua sponte*, the Court must ensure that the movant was provided with "an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law." *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 494 (9th Cir. 2000) (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)) (alteration in original).

**B.     FLCA**

CSI makes two preliminary challenges to Plaintiffs' FLCA claims: (1) that Plaintiffs lack Article III standing to bring their FLCA claims; and (2) that the FLCA does not apply to entities operating outside of Washington. Plaintiffs move for summary judgment on the issues of CSI's status as a farm labor contractor, CSI's violations of the FLCA, and Growers' joint and several liability for CSI's violations. The Court examines each issue in turn.

1.     *Standing*

CSI contends that Plaintiffs lack standing to bring their FLCA claims. (Dkt. No. 98 at 26–

29.)² To establish standing under Article III of the United States Constitution, a plaintiff must allege an injury in fact: (1) that is both concrete and particularized and actual or imminent; (2) that is fairly traceable to the defendant's allegedly unlawful conduct; and (3) which will likely be redressed by a favorable decision of the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (examining cases). To be concrete, the injury "must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016). Intangible harms may constitute concrete injuries. *Id*. at 1549. Thus, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id*. But a statute's granting of a right and authorization to sue does not automatically satisfy the injury-in-fact requirement; a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)); *see Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113–18 (9th Cir. 2017).

The Ninth Circuit has held that the FLCA creates legal rights sufficient to convey standing to agricultural workers seeking statutory damages for their violation. *See Perez-Farias v. Glob. Horizons, Inc.*, 499 F. App'x 735, 738 (9th Cir. 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973); *Perez-Farias v. Glob. Horizons, Inc.*, 286 P.3d 46, 54 (Wash. 2012)). The Ninth Circuit further noted that in the context of a class action, "[p]roof of injury from each class member is not required." *Id*. (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990)); *see also Alvarez v. Longboy*, 697 F.2d 1333, 1336–38 (9th Cir. 1983).

Plaintiffs allege that CSI violated their rights under the FLCA by failing to carry a farm labor contractor's license and exhibiting it to Plaintiffs, failing to obtain a bond and disclose its existence and amount to Plaintiffs, and failing to make required disclosures as to the terms and conditions of Plaintiffs' employment. (Dkt. No. 12 at 31–32.) The FLCA's requirement that a

---

² CSI and Plaintiffs raised similar standing arguments in their briefing on CSI's motion to dismiss for lack of personal jurisdiction. (*See* Dkt. Nos. 95, 108.)

farm labor contractor must hold a license ensures that the contractor has been vetted and meets certain requirements, such as carrying insurance and a surety bond. *See* Wash. Rev. Code § 19.30.030. In addition, a duly-licensed contractor must deposit a surety bond to ensure both the contractor's compliance with the FLCA's provisions and the contractor's payment of sums contractually owed to agricultural workers. *See* Wash. Rev. Code § 19.30.040(1). And requiring a contractor to both exhibit its license and accurately disclose the value of its bond and the terms and conditions of employment ensures that prospective employees are provided with sufficient information to make an informed decision about whether to pursue the employment opportunity. *See* Wash. Rev. Code § 19.30.110(1), (2), (7)(a)–(l). Thus, CSI's alleged failure to comply with these requirements deprived Washington of a chance to evaluate CSI's fitness as a farm labor contractor and Plaintiffs of an opportunity to properly evaluate the offered employment opportunity, while also excusing CSI from guaranteeing Plaintiffs' legal rights. Therefore, the Court FINDS that Plaintiffs have standing to sue for alleged violations of the FLCA, as their alleged harms are sufficiently concrete and particularized, are traceable to CSI's alleged violations of the FLCA, and would be redressed by the Court's award of statutory damages to Plaintiffs. *See Lujan*, 504 U.S. at 560–61; *Spokeo*, 136 S.Ct. at 1548; Wash. Rev. Code § 19.30.170.

### 2.  *Application of FLCA to Foreign Entities*

CSI contends that the FLCA does not apply to it because the statute only applies to entities doing business in Washington. (Dkt. No. 98 at 20–23.) CSI relies on legislative history materials and federal case law analyzing the scope of the federal Agricultural Workers Protection Act. (*Id*. at 20–21; *see* Dkt. No. 99); *see also Escobar v. Baker*, 814 F. Supp. 1491, 1500 (W.D. Wash. 1993). But CSI has not cited any provision in the FLCA limiting its application to entities that operate in Washington. (*See* Dkt. No. 98 at 20–21.) Rather, the FLCA defines farm labor contractors as those that engage in farm labor contracting activity, broadly defined as "recruiting, soliciting, employing, supplying, transporting, or hiring agricultural employees." *See* Wash. Rev.

Code § 19.30.010(4), (5); *see also Perez-Farias*, 286 P.3d at 48. Johnson testified that CSI was required to comply with the FLCA if it engaged in farm labor contractor activity regardless of where it was physically located. (*See* Dkt. No. 96-32 at 4.) Johnson stated that the focus of the inquiry is whether CSI received a fee from a Washington agricultural employer for either recruiting or supplying workers to that agricultural employer. (*Id*. at 7.) Thus, CSI's citation to legislative history materials and federal case law is insufficient to establish that it was exempt from complying with the FLCA because its activities were not conducted in Washington.

CSI also argues that it "sought in good faith to understand and comply with Washington regulatory requirements," as it was told by Soeteber that it did not need to (and could not) register under the FLCA because it was located in Mexico. (Dkt. No. 98 at 21–22.) Johnson has testified that Soeteber's advice was incorrect, and that she has acknowledged that her advice was not based on the FLCA or a recognized policy of L&I; rather, she believed that L&I "would not be able to collect against a company outside the United States." (*Id*. at 4–5.) According to Johnson, the correct advice is "if [CSI] were doing a farm labor contractor activity that would have them in the state of Washington, specifically conducting one of these activities for a fee with a Washington grower, that they would need an FLC license," even if those activities took place in a foreign country but resulted in workers being supplied to a Washington farmer. (*Id*. at 6–7.) CSI has not argued that its reliance on mistaken advice from L&I is sufficient to excuse it from complying with the FLCA. (*See* Dkt. No. 98 at 21–22.) Thus, CSI's reliance on Soeteber's advice does not establish that the FLCA did not apply to CSI despite it qualifying as a farm labor contractor under the statute.

### 3.   *CSI's Status as Farm Labor Contractor*

Under the FLCA, a farm labor contractor is "any person, or his or her agent or subcontractor, who, for a fee, performs any farm labor contracting activity." Wash. Rev. Code § 19.30.010(5). Farm labor contracting activity includes "recruiting, soliciting, employing, supplying, transporting, or hiring agricultural employees." Wash. Rev. Code § 19.30.010(4). An

entity that qualifies as a farm labor contractor under the FLCA must comply with the statute's requirements, including holding a license and depositing a surety bond. *See* Wash. Rev. Code §§ 19.30.020, 19.30.030(1).

CSI's actions as to the H-2A workers sent directly to Washington fall within the broad definition of farm labor contracting activity under the FLCA. CSI arguably acted as a recruiter when it located and contacted the workers preselected by Growers prior to assisting them with the H-2A visa application process. (*See* Dkt. Nos. 100 at 1, 103 at 2.) And CSI's maintenance of a web platform through which prospective workers submit applications for H-2A visa work in the United States is a means of recruiting, albeit a passive one. (Dkt. No. 100 at 1–2; *see also* Dkt. No. 96-18 at 14) (contract describing workers as "individuals recruited by CSI, as well as individuals not recruited by CSI but named by Sarbanand Farms as preferred workers . . . ."). But regardless of how the workers sent directly to Washington were recruited, CSI's assistance with the H-2A visa application process constituted supplying workers to Washington. (*See* Dkt. No. 100 at 2–3.) CSI assisted with the application process to broadly enable H-2A visa workers to work in the United States. (*Id.* at 2.) Under its contract with Defendant Sarbanand Farms, CSI's assistance with the application process specifically resulted in the workers going directly to Washington to work for Defendant Sarbanand Farms. (*See* Dkt. Nos. 96-18 at 14, 100 at 2, 103 at 2.) And CSI received a fee of $85 for each worker sent to work in Washington. (*See* Dkt. Nos. 85-50, 96-18 at 19–20.)

Thus, CSI engaged in farm labor contracting activity when it was paid a fee for recruiting and supplying workers to Defendant Sarbanand Farms for work in Washington pursuant to the contract between CSI and Defendant Sarbanand Farms. *See* Wash. Rev. Code § 19.30.010(4), (5). Thus, there is no genuine dispute that CSI acted as a farm labor contractor as defined by the FLCA as to the workers sent directly to Washington to work for Defendant Sarbanand Farms.

1    Therefore, Plaintiffs' motion for partial summary judgment is GRANTED as to these workers.[3]

2            But the same cannot be said of the workers who were initially sent to California to work

3    for Crowne Cold Storage and Defendant Munger Bros. before being transferred to Washington to

4    work for Defendant Sarbanand Farms. In order for CSI's actions toward the approximately 500

5    workers who were transferred from California to Washington by Growers to be subject to the

6    FLCA, CSI had to receive an additional fee for the transfer; CSI's receipt of a fee to process the

7    workers' visa applications prior to their working elsewhere in the United States is insufficient.

8    (Dkt. Nos. 87-1 at 2–3; 96-32 at 13–16, 24–25; 103 at 2.) CSI did not receive an additional fee

9    when the workers initially sent to California were transferred to Washington. (*See* Dkt. Nos. 85-

10   48, 85-49, 89 at 2.) Rather, CSI recruited and supplied workers to California pursuant to

11   contracts with California entities and only received fees for its services from those California

12   entities. (*See* Dkt. Nos. 85-48, 85-49; *see also* Dkt. No. 96-18 at 5–13.) Therefore, there is no

13   genuine dispute that CSI did not engage in farm labor contracting activity or receive a fee when

14   these workers were sent to Washington, and thus did not fall within the scope of the FLCA. *See*

15   Wash. Rev. Code §§ 19.30.010(4), (5). Plaintiffs' motion for partial summary judgment is

16   DENIED as to these workers.

17           CSI requests that summary judgment be granted in its favor on this latter issue, as there is

18   no genuine dispute that CSI did not receive a fee for Growers' transfer of workers from

19   California to Washington, and thus Plaintiffs' FLCA claims as to these class members must fail.

20   (*See* Dkt. No. 98 at 24); *Cool Fuel, Inc.*, 685 F.2d at 311. Plaintiffs have had an adequate

21   opportunity to establish that there is a genuine dispute of material fact on this issue but have not

22   offered contravening evidence or established that such evidence may be produced in the future.

---

23           [3] Plaintiffs and CSI dispute whether CSI transported class members within the meaning

24   of the FLCA. (*See* Dkt. Nos. 84 at 14, 98 at 24.) Because the FLCA defines a farm labor

25   contractor as an entity that engages in any of the categories listed in the statute and the Court
     concludes that CSI engaged in recruiting and supplying of workers to Washington, the Court

26   need not reach the issue of whether CSI's activities in this case constituted transportation of
     workers. *See* Wash. Rev. Code § 19.30.010(4).

1    (*See* Dkt. No. 106 at 7–9); *Kassbaum*, 236 F.3d at 494. Therefore, summary judgment is

2    GRANTED in favor of CSI on this issue, and Plaintiffs' FLCA claims are DISMISSED as to

3    class members who were initially sent to California and later transferred to Washington, for

4    whose transfer CSI did not receive a fee.

5                        4.   *Violations of FLCA and Damages*

6           Plaintiffs allege that CSI committed three violations of the FLCA as to each class

7    member. (Dkt. No. 84 at 17–19.) CSI does not dispute that it committed the alleged violations.

8    (*See generally* Dkt. No. 98.) First, Plaintiffs allege that CSI failed to obtain a farm labor

9    contractor's license and exhibit it to class members in 2017. (Dkt. No. 84 at 17–18); *see* Wash.

10   Rev. Code § 19.30.110(1). CSI admits that it did not register with L&I as a farm labor contractor,

11   that it did not have a farm labor contractor license in 2017, and that it did not show a farm labor

12   contractor license to the named Plaintiffs when they were recruited in Mexico. (*See* Dkt. Nos. 12

13   at 5, 10, 21, 24; 31 at 4, 8, 20, 22.) Therefore, there is no genuine dispute that CSI failed to

14   obtain a farm labor contractor's license and exhibit it to class members in 2017, in violation of

15   Wash. Rev. Code § 19.30.110(1).

16          Second, Plaintiffs argue that CSI failed to provide class members with the form

17   prescribed by L&I containing required employment information and disclosures. (Dkt. No. 84 at

18   18); *see* Wash. Rev. Code § 19.30.110(7). Both named Plaintiffs state that CSI did not provide

19   them with a document explaining the terms and conditions of their upcoming employment. (*See*

20   Dkt. Nos. 59 at 4, 60 at 4; *see also* Dkt. Nos. 61-9–61-32) (class members' declarations stating

21   that CSI did not provide them with a document describing the terms and conditions of

22   employment in Washington). CSI has not offered evidence establishing that it did in fact provide

23   class members with the form prescribed by L&I. (*See generally* Dkt. No. 98.) Therefore, there is

24   no genuine dispute that CSI failed to provide the form prescribed by L&I to class members, in

25   violation of Wash. Rev. Code § 19.30.110(7).

26          Third, Plaintiffs argue that CSI failed to obtain a surety bond, to disclose the amount of

its bond, and to disclose the existence and amount of any claims against the bond. (Dkt. No. 84 at 19); *see* Wash. Rev. Code §§ 19.30.040, 19.30.110(2). CSI admits that it did not obtain a bond in 2017 and failed to disclose the amount of the bond and the existence and amount of any claims against it. (*See* Dkt. Nos. 12 at 10, 22, 24; 31 at 8, 20, 22.) Therefore, there is no genuine dispute that CSI did not obtain a surety bond or make required disclosures to class members, in violation of Wash. Rev. Code §§ 19.30.040, 19.30.110(2).

Thus, Plaintiffs' motion for partial summary judgment is GRANTED on Plaintiffs' claims that CSI committed three violations of the FLCA per qualifying class member. (*See* Dkt. No. 84 at 17–19); Wash. Rev. Code §§ 19.30.040, 19.30.110(1), (2), (7). The FLCA provides for a statutory award of $500 per plaintiff per violation. *See* Wash. Rev. Code § 19.30.170(2). CSI and Growers have not argued that qualifying class members should be awarded less than the statutory amount. (*See generally* Dkt. Nos. 98, 101.) Therefore, Plaintiffs shall be entitled to recover $1,500 in damages per qualifying class member.

### 5. *Growers' Joint and Several Liability*

Under the FLCA, "[a]ny person who knowingly uses the services of an unlicensed farm labor contractor" is jointly and severally liable with the farm labor contractor "to the same extent and in the same manner as provided" by the FLCA. Wash. Rev. Code § 19.30.200. The FLCA provides a safe harbor provision, under which "any user may rely upon either the license issued by [L&I] to the farm labor contractor under [Wash. Rev. Code §] 19.30.030 or [L&I's] representation that such contractor is licensed as required by this chapter." *Id*.

"As a remedial statute designed to prevent worker exploitation, the FLCA is generally construed liberally to further this purpose." *Saucedo v. John Hancock Life & Health Ins. Co.*, 369 P.3d 150, 155 (Wash. 2016). In *Saucedo*, after examining the plain language of the provision and the FLCA's legislative history, the Washington Supreme Court held that:

Under [Wash. Rev. Code §] 19.30.200, any person who uses the services of an unlicensed farm labor contractor without either inspecting the contractor's license or obtaining a representation from [L&I] that the contractor is properly licensed is

> jointly and severally liable with that contractor, even if that person lacked knowledge that the farm labor contractor was unlicensed.

*Saucedo*, 369 P.3d at 155. Growers do not assert that they inspected CSI's license or obtained L&I's representation that CSI properly held a license under the FLCA. (*See* Dkt. No. 101 at 10–12.) Rather, they argue that there is a genuine dispute as to whether they knowingly used the services of an unlicensed farm labor contractor, as CSI reasonably believed that it did not have to register and the parties' relevant contracts required CSI to maintain all necessary documentation and licensure. (*Id.*) Under *Saucedo*, Growers' efforts to determine whether CSI was properly licensed under the FLCA are insufficient as a matter of law, and Growers' attempts to distinguish the present case from *Saucedo* are unavailing. (*See* Dkt. No. 101 at 12); s*ee Saucedo*, 369 P.3d at 155. Therefore, there is no genuine dispute about whether Growers are jointly and severally liable for CSI's violations of the FLCA pursuant to Wash. Rev. Code § 19.30.200, and Plaintiffs' motion for partial summary judgment is GRANTED on this ground.

### C.      Scope of Relief

As discussed above, Plaintiffs are entitled to recover statutory damages for three violations of the FLCA as to class members who were sent directly to Washington pursuant to the contract between Defendant Sarbanand Farms and CSI, and for whom CSI received a fee. *See supra* Sections II.B.3.–4. But Plaintiffs are not entitled to recover statutory damages under the FLCA for class members who were transferred to Washington by Growers after initially being sent to California, and for whose transfer CSI did not receive an additional fee. *See supra* Section II.B.3. Therefore, Plaintiffs' motion for summary judgment is GRANTED as to class members who were sent directly to Washington pursuant to the contract between Defendant Sarbanand Farms and CSI, for whom CSI received a fee from Defendant Sarbanand Farms. Plaintiffs' motion for summary judgment is otherwise DENIED.[4]

---

[4] Growers briefly note that a class has not been certified as to the group of class members who went directly to Washington and that neither class representative was one of the 103 workers sent directly to Washington, and thus would not be typical of any future class certified

III.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for partial summary judgment on their claims arising under the FLCA (Dkt. No. 84) is GRANTED in part and DENIED in part. Plaintiffs' motion is GRANTED as to CSI and Growers' liability for statutory damages based on three violations of the FLCA per class member sent directly to Washington to work for Defendant Sarbanand Farms pursuant to a contract between Defendant Sarbanand Farms and CSI, and for whom CSI received a fee. Plaintiffs' motion is DENIED as to CSI and Growers' liability under the FLCA for class members who were initially sent to California pursuant to a contract between CSI and Defendant Munger Bros. or Crowne Cold Storage and later transferred by Growers to Washington, and for whose transfer CSI did not receive an additional fee. Plaintiffs' FLCA claims as to these latter class members are DISMISSED.

DATED this 13th day of June 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

on this issue. (Dkt. No. 101 at 4–5, 10) (citing Fed. R. Civ. P. 23(a)(3)). Growers have not moved to decertify the class. (*See generally* Dkt. No. 101.) CSI also does not move to decertify the class, and instead requests that the Court limit the scope of its relief to class members that properly fall under the FLCA. (*See* Dkt. No. 98 at 26.) The parties may move to modify the class as necessary in a later motion in light of the Court's order.

ORDER
C18-0112-JCC
PAGE - 14